UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

KERRY G. CALDWELL
Petitioner

v.

FEDERAL BUREAU OF PRISONS
Defendant

TIMOTHY BARNETT
Defendant, In his individual
capacity as National Inmate
Appeals Administrator

AMY BONCHER
Defendant, In her individual
capacity as Northeast
Regional Director

ERIK RICKARD_
Defendant, In his individual
Capacity as Warden of FCI
Otisville

J. NALEPA
Defendant, In his individual
capacity as Disciplinary
Hearing Officer

B. TURK
Defendant, In his individual
capacity as Lieutenant FCI
Otisville

B. BARTSCH
Defendant, In his individual
capacity as Unit Disciplinary
Committee Officer/Unit Manager

Case No.:_____

COMPLAINT

DEMAND FOR TRIAL



KERRY G. CALDWELL
#22279-044
FCI Otisville
P.O. Box 1000
Otisville, ny. 10963
in pro se, in necessity

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KERRY G. CALDWELL )
Petitioner )
)
)
v. ) Case No.:_____
)
FEDERAL BUREAU OF PRISONS ) COMPLAINT
Defendant )
) DEMAND FOR TRIAL
DEFENDANTS TO BE NAMED )
Defendants )

## INTRODUCTION

**COMES NOW the** Petitioner, Kerry G. Caldwell, with his Civil Action against the above named defendants under 42 U.S.C. §1983 and and §1985, for violating Mr. Caldwell's Constitutional Rights Under Colour Of Law, and also where Mr. Caldwell is in iminenet danger of suffering an impending deprivation of his Constitutional Rights in the future, and will occurr as a result of the ultra vires actions of the Defendants.

This Civil Action is a demand for injunctive relief to stay the future deprivation of Mr. Caldwell's Rights, as well as for monetary damages for injuries caused by the Federal Bureau Of Prisons, and the ultra vires actions of it's employees in the course of their employment with the BOP.

## JURISDICTION

This Court has Jurisdiction of this action under 28 U.S.C. §1331, the statute confering general jurisdiction in civil actions to United States District Courts.  Also under 42 U.S.C. §1983, which allows for civil actions for deprivation of Constitutional Rights by Federal

1

employees, and 42 U.S.C. §1985(3) which allows for Civil Actions for Conspiracy to Interfere with Rights. Or, in this case, depriving persons of Rights or Priviledge.

## STATEMENT OF FACTS

On 2 January 2025, the housing unit that Mr. Caldwell resides in, Unit GB at FCI Otisville, was subject of a fairly comprehensive shakedown wherein contraband of all types was searched for and recovered from Unit GB.  This search lasted from approximately 08:00 until 13:30 hrs.  While this search was conducted, all inmates were ordered to the Recreation Yard for containment during the search.

At Approximately 08:30 on 2 January 2025, it is alleged by the FCI Otisville Staff Member searching cell #211 that a cellular Telephone was discovered in Mr. Caldwell's locker, allegedly hidden in his effects.  This reporting staff member, Kristen Savage, is not a regular housing unit officer, and her identity as the reporting officer was concealed from Mr. Caldwell for several weeks after the 2 January 2025 housing unit search.

Upon returning from the Recreation Yard, Mr. Caldwell went to his cell, #211, and noticed that the cell was a complete mess and it looked like a bomb had gone off.  This is a punitive, juvenile, and childish form of retribution practiced by the staff at FCI Otisville whenever they feel that they have been inconvenienced in any manner.

After nearly 2 hours, from 13:30 to 15:30, Mr. Caldwell was able to clean up his cell, and was able to discern that some of his property that IS NOT contraband was removed from his cell.  This was done without a Confiscation Report, which is required under Bureau Of

2

Prisons Policy Statement number 5521.06 . Further, some of his property that was left behind was either destroyed or damaged by staff members during the search, and required Mr. Caldwell to throw those items away.

It is claimed that on 2 January 2025, by Lt. B. Turk, that he did deliver to Mr. Caldwell, in his cell, #211, at 16:25 hrs., a disciplinary report for violating §108 of the Bureau Of Prisons' Disciplinary Code, under the Bureau's Policy Statement number 5270.09 , which describes what each code number corresponds to. *note:(There is a video camera to the left and right of Mr. Caldwell's cell door, as well as one higher up that also shows Mr. Caldwell's cell door. These cameras record continuously 24 hrs.)

On 3 January 2025, Mr. Caldwell was called to his Unit Manager's Office. Mr. Caldwell then appeared before Unit Manager Brian Bartsch, who in his capacity as Unit Manager, is also the UDC (Unit Disciplinary Committee) for units GB, GA and FB. At this point, Mr. Caldwell has still not received a written notice that he is/was subject to disciplinary proceedings. Mr. Caldwell was forced to stand UDC proceedings with no knowledge of the charge(s) against him. This UDC Hearing was conducted orally, and no written/typed/printed documents were given to Mr. Caldwell.

At this hearing, Mr. Caldwell notified Mr. Bartsch, that he had not received a disciplinary report notifying him of any charges or of any disciplinary proceedings with regards to any alleged infractions. Mr. Bartsch claimed that Mr. Caldwell should have received a disciplinary report on 2 January 2025, at 16:25 hrs., by Lt. B. Turk. Mr. Bartsch further elaborated that this should have

3

been during 4 pm. count.  Mr. Caldwell again, asserted that he had not received any disciplinary report at that time and that a review of the cameras, would reveal and support Mr. Caldwell's assertions that Lt. B. turk had **NOT** in fact served Mr. Caldwell on 2 January 2025. Mr. Bartsch claimed to have noted Mr. Caldwell's assertions, and declined to sanction Mr. Caldwell at that time.  Instead, Mr. Bartsch refered Mr. Caldwell to the DHO (Disciplinary Hearing Officer) for further investigation and if warranted disciplinary proceedings. Mr. Bartsch reminded Mr. Caldwell to inform the DHO that he had not received a disciplinary report within 24 hrs. of the alleged infraction as is required by Bureau Of Prisons Policy Statement number 5270.09  , and perhaps any consequnces might be lessened.

On 6 January 2025, Mr. Caldwell, while engaged in conversation with then Captain Mark Argir, mentioned that he was being subjected to disciplinary proceedings without having received any disciplinary report.  Like Mr. Bartsch, Capt. Argir suggested that Mr. Caldwell notify the DHO at the hearing that he had not received a disciplinary report, and perhaps the proceeding would be dismissed or Mr. Caldwell could be given less severe sanctions.  The Captain also noted that the proper procedure would be to dismiss the disciplinary complaint because proper porcedures had NOT been followed thus far.

On  7 January 2025, at 13:00 hrs., Mr. Caldwell's DHO Hearing was held, and he was in attendance, and was given opportunity to speak.  Mr. Caldwell informed DHO Nalepa that he had not been given proper written notice of the current disciplinary action.  DHO Nalepa showed no concern, and proceeded with the disciplinary action against Mr. Caldwell in an abrupt and rushed manor.  The DHO sanctioned

4

Mr. Caldwell to loss of use of his tablet for 60 days, loss of visitation for 60 days, and 41 days of GCT (Good Conduct Time). At the DHO Hearing, Mr. Caldwell was denied the opportunity to review the cameras that would have shown that Lt. B. Turk did NOT serve the disciplinary report on Mr. Caldwell on 2 January 2025 at 16:25 hrs., and he was denied opportunity to call Lt. B. Turk as a witness in his own defense.

The Bureau Of Prisons Policy Statement 5270.09 allows for up to Fifteen (15) days for the DHO to issue his report, which as a matter of law MUST be done prior to the sanctions taking affect on the adjudicated party. In this instance, the DHO report was delivered to Mr. Caldwell on 31 January 2025 at 13:00 hrs. This is Nine (9) days in excess of the allotted time allowed by the Bureau Of Prisons' own Policy Statement,

Further, the DHO Report that Mr. Caldwell was handed on 31 January 2025, was essentially BLANK, except for some cursory information. This would include: Mr. Caldwell's name, registration number, incident report number, housing unit, date of incident, date the DHO Hearing was held, and a falsified statement by DHO Nalepa that Lt. B. Turk delivered a copy of the incident report to Mr. Caldwell on 01-02-2025 at 16:25 hrs. Other than DHO Nalepa's electronic signature, the DHO Report is BLANK. A signature by R. Fernandez on 1/31/25, 1:00 pm indicates the day, date, and time that Mr. Caldwell received the copy of the DHO Report. Again, this was well in excess of the time allowed by Bureau Of Prisons Policy Statement 5270.09 and C.F.R. §541.3 which the Policy Statement is based on.

5

Mr. Caldwell's sanctions however, commenced on or about 7 January 2025, a few hours after he left the DHO Hearing, and were implemented in violation of clearly established law as set forth by the United States Supreme Court.

On 5 February 2025, Mr. caldwell filed a timely and meritorious BP-10 also known as a Regional Administrative Remedy Appeal. Mr. Caldwell in his BP-10 cited appropriate Supreme Court Case Law, explained the circumstances and expressed his desire to have the disciplinary action against him expunged from his record, as well as the reinstatement of his Forty One (41) days of GCT (Good Conduct Time).

On 10 March 2025, Mr. Caldwell received a response from North-east Region Director, Amy Boncher. In her response to Mr. Caldwell, Ms. Boncher mischarecterized Mr. Caldwell's appeal and claims that he "did not deny committing the prohibited act." Ms. Boncher completely overlooks and omits the fact that Mr. Caldwell DID NOT receive advanced written notice of the disciplinary charges, which as a matter of law, MUST be given prior to commencement of ANY disciplinary actions against an inmate. Further, Ms. Boncher correct-ly acknowledges Mr. Caldwell's claim that he did not receive a DHO . Report, as the copy he did receive on 1/31/25, was Nine (9) days outside of the allotted time. The Fifteen (15) day deadline is set forth in Bureau Of Prisons Policy Statement 5270.09, as established in C.F.R. §541. Also, the copy of the DHO Report that he did receive, was BLANK, with only cursory information found on the report. Ms. Boncher's response stated that Mr. Caldwell's appeal revealed questions concerning the disciplinary process as applied to Mr. Caldwell.

6

Ms. Boncher's statement ends with "Your appeal is partially granted."

Since Mr. Caldwell's sanctions had already come to pass, the loss of use of tablet for 60 days, and the loss of visitation for 60 days, the only other sanction that she can make Mr. Caldwell whole on, is the loss of Forty One (41) days of GCT (Good Conduct Time). This, and the expungement of the disciplinary action against him are what Mr. Caldwell should have recovered from his successful appeal and Ms. Boncher GRANTING his requested relief.

On 3/18/25, DHO Nalepa, after being informed that he had violated a Bureau Of Prisons Policy Statement, served Mr. Caldwell with a re-write copy of the DHO Report that he fabricated on 3/18/25. This action By DHO Nalepa essentially reactivated the sanctions that were initially levied against Mr. Caldwell, and stripped him of his Forty One (41) days of recovered GCT (Good Conduct Time). This re-serving of Mr. Caldwell is a full Fifty Five (55) days outside the Fifteen (15) day limit set forth in Policy Statement 5270.09, which clearly states "The DHO gives the inmate a written copy of the decision and dispositions, ordinarily within 15 workdays of the decision." Since the Bureau Of Prisons is a 24/7 operation, the Fifteen (15) days is usually considered contiguous from the date of the DHO Hearing. Further, in a memo to Warden Erik Rickard, Ms. Boncher states that the DHO has to complete the DHO Report and issue inmate Caldwell a completed copy.

This action is in violation of clearly eastablished Law, as set forth by the United States Supreme Court. Much like a search warrant cannot be issued nunc pro tunc, neither can the Bureau Of Prisons issue a nunc pro tunc DHO Report to cure it's already flawed and

7

and unconstitutional process which it initiated against Mr. Caldwell.

On 17 March 2025, Mr. Caldwell received his BP-10 back from Northeast Region, along with Ms. Boncher's response. This preceeds DHO Nalepa's nunc pro tunc DHO Report of 3/18/25. On 26 March 2025, he filed a timely and meritorious appeal, or BP-11 Central Office Administrative Remedy Appeal, with the Federal Bureau Of Prisons in Washington, D.C., again detailing the abuse of process by Bureau Of Prisons personel at both the Northeast Regional Level, and at FCI Otisville. Mr. Caldwell expressed clearly what the issues were, and that this BP-11 would exhaust his administrative remedies and that he would now be free to litigate to recover any losses or for compensation for injuries sustained while wading through the disciplinary process.

On 14 April 2025, Timothy Barnett, National Inmate Appeals Administrator, FAILED to address Mr. Caldwell's BP-11 and the Northeast Regions violation of clearly established Law. Mr. Barnett stated that upon completion of the remand action, that Mr. Caldwell would need to again appeal via BP-10 to the Northeast Region. Further, Mr. Barnett fails to address the violation of clearly established Law as set forth by the United States Supreme Court, and the Northeast Regions violation of clearly established Bureau Of Prisons Policy Statements, which is also a violation of clearly established Law.

To this end, Mr. Caldwell has exhausted his Administrative Remedy Process, (1) by following through each step of the process appropriatly and in a meritorious and timely manner, and (2) where the Bureau Of Prisons has delayed the process beyond thirty (30) days which is the well established window for which a Government Agency has to

8

comply with the Laws of the United States and it's own Policy Statements. It is clear from the Bureau Of Prisons' actions, that regardless of Mr. Caldwell's good-faith attempts, that the Bureau Of Prisons refuses to follow it's own Rules.

## STATEMENT OF THE ISSUES

Mr. Caldwell claims and maintains that his Procedural Due Process Rights under the Fifth Amendment to the United States Constitution have been and continue to be violated by the Federal Bureau Of Prisons, by employees of the Bureau and their ultra vires actions with regards to Mr. Caldwell's disciplinary process.

In the Issues Presentd and in future filings(if any), Mr. Caldwell will chronicle the failures, deficiencies and abuse of process that the Bureau Of Prisons employees engage in on a regular basis with regards to the disciplinary process at FCI Otisville, located in Otisville, New York. This abuse of process at FCI Otisville is rampant and is only becoming even more commonplace.

The unfortunate overall issue here is that the Bureau Of Prisons employees, staff, and contractors have grown accustomed to this substandard level of performance, and is not even seen as being substandard by anyone who works for the Bureau Of Prisons, it is just another day at Otisville.

Even more unfortunate, is the fact that this substandard performance and behavior are condoned at the Regional Level, where the practice seems to be that of ignoring the law and written policy, and morphed into the ideology that inmates need to be taught a lesson. This turning a blind eye to abuses policy, whether official or unofficial extends all the way to the Central Office in Washington, D.C.,

9

where again the atmosphere seems to reflect the ideology that the law and proper procedure have no place in the penal setting.

This Ideology is toxic, it is rampant, and it is practiced to the detriment of the justice system as a whole.

In the foregoing issues, Mr. Caldwell will illuminate the issues so that this Court can make an informed and proper decision based on the appropriate facts and law.

## ISSUES PRESENTED

**ISSUE I:** On 2 January 2025, disciplinary action was initiated against Mr. Caldwell, where Buraeu Of Prisons employee Kristen Savage initiated an Incident Report secondary to her allegedly discovering contraband in Mr. Caldwell's cell, #211, at approximatelly 08:30 hrs. This time of 08:30 is still as of yet etched in stone. In a future hearing, paperwork generated from that hearing which includes a "re-write" of Ms. Savage's report, state a time of 10:15 as being the time she allegedly discovered the contraband, and for the purposes of this instant issue the time is essentially irrelevent.

In the DHO Report, which Mr. Caldwell will receive at a future proceeding, but is used to supply narrative for this instant issue, DHO Nalepa indicates that Lt. B. Turk delivered to Mr. Caldwell in his cell, #211, on 2 January 2025 at 16:25 hrs., his copy of the Disciplinary Report initiated by Ms. Savage. In the DHO Report, §I, line A. "Advanced notice of charge (copy of Incident Report) was given to inmate on 01-02-25 at 16:25 hrs. (by staff member) B. Turk."

In early March 2025, Mr. Caldwell was shown a copy of the original Incident Report for Incident #4048603. In Ms. Savage's

10

narrative, the time of alleged discovery of contraband is 08:30.
At the bottom of the Incident Report, in box 14. "Incident Report
Delivered to Above Inmate by (Type Name/Signature). In this box,
Lt. B. Turk's name appears. This statement is a material misstate-
ment of fact. Mr. Caldwell steadfstly maintains that he was not
served with a copy of the Incident report #4048603 on 2 January 2025
at 16:25 hrs.

Under Bureau Of Prisons Policy Statement 3420.12 Standards for
Employee Conduct, based on 5 C.F.R. §2635, in Table A, item #47
Falsification, Missrepresentation, Exageration or Concealment of
Material facts in Writing or Verbally, is an offense which carries for
a first time infraction, a 30 day suspension to removal as a Bureau
Of Prisons Employee.

This act of falsifying documents in a Federal Investigation
violates the Administrative Procedures Act, 5 U.S.C. §§701 et seq.
Under 5 U.S.C. §702 Right of Review: A person suffering a legal wrong
because of agency action, or adversly affected or aggrieved by agency
action within the meaning of the relevent statute is entitled to
judicial review thereof. An action in a Court of the United States
seeking relief other than money damages and stating a claim that an
agency or an officer or employee thereof acted or failed to act in an
official capacity or under color of legal authority shall not be
dismissed nor relief therein be denied on the ground that it is agai-
nst or that the United States is an indespensable party.

In the instant case, by affixing his signature to the Incident
Report #4048603, Lt. B. Turk did in effect certify that he had
delivered the incident report to Mr. Caldwell on 2 january 2025 at

11

16:25 hrs., when in fact he did not. This deprivation of prior written notice and falsification of written records violates Mr. Caldwell's procedural Due Process Rights under the Fifth Amendment of the United States Constitution. Further, 18 U.S.C. §242 Deprivation of Rights Under Color of Law, is a felony which is punishable by the imposition of Federal Prison Time.

Also, false statements or lying during the course of a Federal Investigation are also felonies which are punishable with federal Prison time under the United Staes Code Service.

In 5 U.S.C. §704 Actions Reviewable: Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. Therefor, this issue survives and Mr. Caldwell's claim remains viable that his procedural Due Process Rights were violated by Lt. B. Turk when he falsified the 2 January 2025 Incident Report #4048603, that he delivered a copy to Mr. Caldwell in his cell, #211 at 16:25 hrs.

ISSUE II: Mr. Caldwell incorporates specifically by reference the facts and information contained in Issue I. On the Morning of 3 January 2025, sometime after 09:00 but before 10:30 Recall, Mr. Caldwell was called to Unit Manager Bartsch's Office, where acting as the UDC (Unit Disciplinary Committee), initiated further disciplinary action against Mr. Caldwell with regard to Incident report #4048603. During this ad hoc and informal hearing in Mr. Batsch's office, Mr. Caldwell informed Mr. Bartsch that he had not received a copy of any Incident Report on 2 January 2025 at 16:25 hrs., as Mr. Bartsch claims that he should have. Mr. Caldwell asked to review the camera footage of the GB Housing Unit to confirm or deny that he had not received the

12

alleged Incident Report, as claimed now by both Lt. B. Turk and Mr. Bartsch.

To his credit, Mr. Bartsch did take Mr. Caldwell's claim that he had not received the Incident Report into account, but declined to investigate further. Mr. Caldwell's request to review the camera footage was denied at that point by Mr. Bartsch's refusal to investigate the verasity of Mr. Caldwell's claim.

At that point, Mr. Bartsch refered Mr. caldwell to the DHO (Disciplinary Hearing Officer) for further investigation and/or disciplinary action(s). This action by Mr. Bartsch violates Burea Of Prisons Policy Statement 5270.09 which is based on 5 C.F.R. §541 et seq., which only allows for up to 24 hours from the time of the incident to issue a disciplinary report, which is considered the prior written notification of a pending disciplinary action.

***NOTE: Here now, the 08:30 vs. the 10:15 time discrepancy could be an issue, but because Mr. Caldwell was not actually served a copy of the Disciplinary Report #4048603 before 10:15 on 3 January 2025, the 24 hour service rule in the Policy Statement precludes any assumption that Mr. Caldwell was, or would have been served on 3 January 2025, when it came to the attention of staff that Lt. B. Turk had failed to serve Mr. Caldwell on 2 January 2025.

By initiateing and furthering disciplinary action with the knowledge that Mr. Caldwell had not received his written copy of the incident report, Mr. Bartsch has violated clearly established law as set forth by the United States Supreme Court.

In Superintendant v. Hill, 472 U.S. 445,454 (1985), The Court stated that "To comport with procedural Due Process, an inmate charged with a violation in a disciplinary hearing, MUST be given (1) advanced written notice of the disciplinary charges." In this instance, Mr.

13

Caldwell was prejudiced and sustained the Constitutional injury when Mr. Bartsch declined to investigate Mr. Caldwell's claim that he had not received the Incident Report and furthered the disciplinary action against Mr. Caldwell.

As in ISSUE I:, This is also a violation of the Administrative Procedures Act, 5 U.S.C. §701 et seq., as well as a violation of 18 U.S.C. §242 Deprivation of right under color of law. Thus, under 5 U.S.C. §702 Right of Review: A person suffering legal wrong because of agency action, or adversly affected or aggrieved by agency action within the meaning of the relevent statute, is entitled to judicial review thereof. therefore, this issue survives, and Mr. Caldwell's claim to have been denied procedural Due Process remains viable as to this issue. This claim being that his Constitutional Rights have been violated by the Federal Bureau Of Prisons, or and employee thereof.

ISSUE III: Mr. Caldwell incorporates specifically by reference the facts and information presented and relied on in ISSUES I and II.

On 7 January 2025, Mr. Caldwell was summoned to his DHO Hearing which took place at approximately 13:00 hrs. on that day. At this point, Mr. Caldwell still has not received a hard copy of the Incident Report #4048603 which is purported to serve as an "Advanced written notice of charge (copy of incident report)," which is stated in the as yet to be issued DHO Report.

Again, this violates Bureau Of Prisons Policy Statement 5270.09 Inmate Discipline Program which is based on 5 C.F.R. §541. This Policy Statement gives clear notice to Bureau Of Prisons Staff, that the Inmate MUST receive a copy of the Incident Report within Twenty Four (24) hours of the alleged incident.

14

At the DHO Hearing before DHO Nalepa, Mr. Caldwell was again given opportunity to speak and present his defense. Mr. Caldwell notified DHO Nalepa, verbally, that he had not received a copy of the incident report that was purported to have been delivered to him in his cell, #211, in housing unit GB on 2 January 2025 at 16:25 hrs. As noted in previous issues, Lt. B. Turk certified via signature that he had completed this action.

DHO Nalepa took no immediate action with regards to Mr. Caldwell's claim, and allowed him to continue with his defense arguement. At this point, Mr. Caldwell requested respectfully yet sternly that the DHO (Nalepa), review the cameras in Unit GB for any and all video footage between 16:00 and 17:00 hrs. for 2 January 2025 that would show Lt. B. Turk delivering the contested incident report. Mr. Caldwell stood his ground and maintained that there would be no video footage showing Lt. B. Turk serving him (Mr. Caldwell) a copy of the Incident Report #4048603 as certified by Lt. B. Turk. Mr. Caldwell maintained then as he does today, that Lt. B. Turk LIED and or falsified material facts in writing where he certified that he had completed delivery of the Incident Report #4048603, in violation of Bureau Of Prisons Policy Statement 3420.12 which is based on 5 C.F.R. §2635.

DHO Nalepa DENIED Mr. Caldwell's request and later demand, that the video be produced to difinitively discern the verasity of Lt. B. Turk's claim to have delivered the incident Report as certified. This action by DHO Nalepa, falls squarely in the camp of being a Brady/Bagley/Giglio Violation. The Supreme Court at one point has seen fit to combine the case names as they are all relatively close

15

in nature with regards to withholding material evidence.  In Bagley v. United States, 473 U.S. 667, 669 (1985), the Court stated, "In Brady v. Maryland, 373 U.S. 83, 87 (1963), this Court held that the 'suppression by the prosecution of evidence favorable to an accused violates Due Process where the evidence is material either to guilt or punishment.'"  Here, the denial by DHO Nalepa, to view video footage from the day in question, 2 January 2025 is a clear violation by DHO Nalepa of the Brady/Bagley/Giglio Doctrine.  Because DHO Nalepa so vehemently denied Mr. Caldwell's demand to review the 2 January 2025 video footage from unit GB, it can safely be premised that DHO Nalepa was already well aware that Lt. B. Turk had falsified that document, that DHO Nalepa was left with no choice but to deny Mr. Caldwell's request/demand to view the video footage.  DHO Nalepa apparently had not anticipated Mr. Caldwell's tenacity, and was again perplexed when Mr. Caldwell respectfully demanded that Lt. B. Turk be called as a witness.  In short order, DHO Nalepa denied Mr. Caldwell's request/demand, and again committed a Constitutionaly fatal error.

In Johnson v. Chatman, 577 U.S. 1019 (2015), the Court stated, "A criminal defendant 'shall enjoy the right...to be confronted with witnesses against him.' U.S. Const. Amdt. 6.  We have held that this right entitles the accused to cross-examine witnesses..., and to exclude certain out-of-court statements that the defendant did not have prior opportunity to cross-examine."  And likewise in Davis v. Alaska, 415 U.S. 308 (1974), In Held: Petitioner was denied his right of confrontation of witnesses under the Sixth and Fourteenth Amendments.  In Held (a): The Court stated that a Petitioner was entitled to show bias of a witness against him, regardless of whether the witness had engaged in any wrongdoing.  And in Held (b): The

16

Petitioner's right of confrontation is paramount to any embarrassment disclosed regarding a witness, and that embarrassment is outweighed by Petitioner's right to effectively cross-examine a witness.

Further, DHO Nalepa's denial of Mr. Caldwell's request to call Lt. B. Turk as a witness violates Bureau Of Prisons Policy Statement 5270.09 Inmate Disciplinary Program, which is based on 5 C.F.R. §531, which allows for an inmate to call for witnesses in his own defense.

18 U.S.C. §242 Deprivation of rights under color of law, is a criminal offense to which DHO Nalepa could be subject to for his unconstitutional actions , as well as 5 U.S.C. §§701 et seq. Administrative Procedures Act.  Because DHO Nalepa's ultra vires actions are felonious, violate the Administrative procedures Act, Bureau Of Prisons Policy Statement, as well as the United States Constitution, Mr. Caldwell's claims survives and his Constitutional injury is subject to review under 5 U.S.C. §702 Right of Review and §704 Actions rewiewable.

ISSUE IV:  Mr. Caldwell expressly incorporates by reference, the facts and information contained in and relied upon in ISSUES I thru III.

On 7 January 2025 at approximately 13:00 hrs., Mr. Caldwell's DHO Hearing was held, and he was in attendance.  At the conclusion of the DHO Hearing, DHO Nalepa sanctioned Mr. Caldwell to Sixty (60) days loss of use of his tablet-(electronic device similar to a Kindle), Sixty (60) days loss of visitation, and Forty One (41) days loss of GCT (Good Conduct Time).

Within hours after receiving his stated sanctions, Mr. Caldwell's Tablet was rendered inoperable and Mr. Caldwell was locked out. It is also premised that Mr. Caldwell's visitation sanctions began at the

17

same time, as well as his loss of GCT (Good Conduct Time).

This application of sanctions in such a rapid manner, is a Constitutionaly fatal error on the part of DHO Nalepa.  It is well established and long standing law, as set forth by the United States Supreme Court, that "A prisoner's Good Time credits give rise to a liberty interest under the United States Constitution's Fifth Amendment."  In Wolff v. McDonald, 418 U.S. 539 556-57 (1974), an inmate deprived of Good Time Credit... as a result of Disciplinary Proceedings are entitled to the "Minimum requirement of Due Process."  In Superintendant v. Hill, 472 U.S. 445, 454 (1985), the Court stated, "To comport with procedural Due Process, an inmate charged with a violation in a disciplinary hearing, MUST be given (1) advanced written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence relied on in his defense; and (3) a written statement by the finder of fact of the evidence relied on and the reasons for the disciplinary actions.

Again, as stated previously, Mr. Caldwell's sanctions began on 7 January 2025, and Mr. Caldwell did not receive his DHO Report until 01/31/2025, it was delivered by R. Fernandez.  This is well outside of the allotted time of 15 days from the day the DHO makes his decision.  This is clearly stated in the Policy Statement 5270.09 Inmate Disciplinary Program.  DHO Nlepa, by initiating the sanctions that he assessed prior to the service of the DHO Report, violates clrearly established and long standing law, as well as Mr. Caldwell's procedural Due Process Rights.

    ***NOTE: The copy of the DHO Report for Incident #4048603 was BLANK and it contained no other information outside of the cursory information outlined in the statement of facts.

18

In essence, because this report was void of any of the information required by Superintendant, supra, it is the same as Mr. Caldwell having NOT received any DHO Report at all. Again, because the sanctions took effect on or about 7 January 2025, and Mr. caldwell did not receive the BLANK DHO Report until 31 January 2025, Mr. Caldwell's procedural Due Process Rights have been violated by the Federal Bureau Of Prisons and it's employees.

18 U.S.C. §242 Deprivation of Rights Under Colour of Law, is a felony punishable by Federal Prison Time. Thus, Mr. Caldwell's claim survives, and is reviewable under 5 U.S.C. §§701 et seq., namely 5 U.S.C. §702 Right of review, and §704 Actions rewiewable.

ISSUE V:. Mr. Caldwell expressly incorporates by reference the facts and information set forth and relied upon by him in ISSUES I thru IV.

On 7 January 2025, Mr. caldwell's DHO Hearing was held, and he was adjudicated guilty of the charge. Mr. Caldwell was sanctioned as stated in ISSUE IV, and the sanctions were implemented on or about 7 January 2025. Mr. Caldwell did not however receive a copy of the DHO Report, as the copy he did receive on 01/31/2025, was BLANK save for cursory information identifying Mr. Caldwell and a statement in §I, line A. In §I Notice of charge(s), line A, it states "Advanced written notice of charge (copy of Incident Report) was given to inmate on 01-02-2025 at 16:25 hrs. (by staff member) B. Turk. In §IX Discipline Hearing Officer, where it says "printed name" NALEPA appears in the box. Where it says "signature", NALEPA appears in the box. In the box labeled "Date", the box is BLANK/EMPTY.

By placing his electronic signature on this DHO Report, DHO

19

Nalepa has falsified a written report/document where he states in §I, line A, that Mr. Caldwell has received "advanced written notice of charge (copy of Incident Report) was given to inmate on 01-02-2025 at 16:25 hrs. (by staff member) B. Turk. The entire crux of Mr. Caldwell's claim in ISSUE I, is that he has never received a copy of Incident Report #4048603 as claimed by Lt. B. Turk, and now DHO Nalepa. This falsification of documents is in violation of Bureau Of Prisons Policy Statement 3420.12, Standards for Employee Conduct which is based on 5 C.F.R. §2635, Standards of Conduct, and in Table A, #47, Falsification, Misrepresentation, Exageration or Concealment of material facts in writing or verbally, is punishable for a first time infraction , by 30 days suspension up to Removal as a Bureau Of Prisons Employee. DHO Nalepa has clearly acted ultra vires, and has violated Mr. Caldwell's procedural Due Process Rihgts, where he falsified a report to further the DHO proceedings rather than stay the DHO proceedings until he could difinitively verify the veracity of Mr. Caldwell's claims that he had not received any copy of the Incident Report #4048603.

DHO Nalepa has also committed a felony under 18 U.S.C. §242, Deprivation of Rights Under Colour of Law, which is punishable by Federal Prison Time.

Thus, because DHO Nalepa cannot establish that Mr. Caldwell was served a copy of this alleged Incident Report #4048603 on 2 January 2025 at 16:25 hrs, as DHO Nalepa himself has certified in the DHO Report, Mr. Caldwell's claim survives and is reviewable under the Administrative Procedures Act, 5 U.S.C. §§701 et seq., as is Mr. Caldwell's Constitutional injury suffered by the ultra vires actions

20

of Bureau Of Prisons employee, DHO Nalepa.

ISSUE VI:  Mr. Caldwell expressly incorporates by reference the facts and information set forth and relied upon by him in ISSUES I thru V.

On 5 February 2025, Mr. Caldwell filed a timely and meritorious appeal to his DHO proceedings, by filing a BP-10 with the Northeast region, based in Philadelphia, PA.  In his appeal, Mr. Caldwell outlined his claims that he had not received a copy of Incident Report #4048603 on 2 January 2025, as had been previously claimed by Lt. B. Turk, and DHO Nalepa.  Both of these individuals have falsified written documents which expressly claim that the Incident Report had been delivered on that date.

Further, Mr. Caldwell also claimed that his property had been removed from his cell, #211, during the search and that no confiscation report had been left, and also that some of his property was damaged beyond salvage by staff members who conducted the search of his cell on 2 January 2025.

On 17 March 2025, Mr. Caldwell received a response from the Northeast regional Director, Ms. Amy Boncher.  This letter is dated March 10, 2025.  In this response, Ms. Boncher mischarecterizes Mr. Caldwell's claims and fails to address certain aspects of Mr. Caldwell's claims.

In her response to Mr. Caldwell, Ms. Boncher stated, "You do not deny committing the prohibited act, but allege you were never given a copy of the DHO Report,..."  This is a material misstatement of fact, as Mr. Caldwell clearly stated that he never received a copy of the Incident report #4048603 and that the DHO Report was

21

BLANK, both claims have been addressed in prior ISSUES of this instrument. Further, Ms. Boncher states, "A review of your appeal revealed questions concerning the disciplinary process." Ms. Boncher ends her response with, "your appeal is partially granted." Because Ms. Boncher does not enumerate what exactly has been "granted," the premise is that Mr. caldwell has recovered his Forty One (41) days of GCT (Good Conduct Time).

At this point, Mr. Caldwell has the expectation that he has been made whole by his recovery of his Forty One (41) days of GCT (Good Conduct Time), yet in checking with his Case Manager, Mr. Caldwell's release date is still Forty One (41) days beyond where it was prior to the 7 January 2025 DHO Hearing.

In a contemporaneous Memorandum to the Warden of FCI Otisville, Mr. Erik Rickard, Ms. Boncher states, "He denies committing the prohibited act and requests the Incident Report be expunged." This is a material misstatement of fact by Ms. Boncher, in violation of the Bureau Of Prisons Policy Statement 3420.12, Standards For Employee Conduct, which is based on 5 C.F.R. §2635, where employees are directed to "endeavor to avoid actions creating the appearance that they are violating the law or the ethical standards promulgated in this Policy and the statutes. In Table A, #47, Falsification, Misrepresentation, Exageration or Concealment of material facts in writing or verbally is an offense which subjects Ms. Boncher disciplinary actions up to and including removal as a Bureau Of Prisons Employee.

Ms. Boncher's material misstatements of fact cannot be excused. In her response to Mr. Caldwell, Ms. Boncher states, "you do not

22

deny committing the prohibited act, but allege you were never given a copy of the DHO Report,..." In her Memo to Warden Rickard she states, "He denies committing the prohibited act..." This begs the question, which version of her truth is Ms. boncher willing to stand behind? She can't have both. Further, in the Memo she states to Warden Rickard, "Upon review, a concern was noted. Specifically, inmate Caldwell received a BLANK copy of the DHO Report,..." This statement shows that she freely admitted that Mr. Caldwell's claim is valid and viable. At no time during any interaction with the Bureau Of Prisons in regards to Incident Report #4048603, has Mr. Caldwell either verbally or in writing, confirmed or denied the alleged infraction. At all time, Mr. Caldwell's claims have been specifically directed towards the procedural aspect of the process, and more specifically, the failures of the Bureau Of Prisons to properly serve the incident report, and their falsifications as to the matter, as well as the DHO's serving a BLANK DHO Report. Ms. Boncher is quite simply a LIAR, and completely misses the entire point of the grievance and the process itself.

In her response, Ms. Boncher also fails to address Mr. Caldwell's claim that he was never served with a copy of Incident Report #4048603. Ms. Boncher also fails to address Mr. Caldwell's claim that FCI Otisville Staff have violated the Bureau Of Prisons Policy Statement 5521.06 Searches of Inmate Housing and Work Area, which is based on 5 C.F.R §552.14 b. This Policy clearly states, "staff conducting the search shal leave the housing or work area as nearly as practicable in its original order." In Mr. Caldwell's case and in nearly every other search during a shakedown, this DOES NOT happen. Staff members are amused by the idea of "Tornadoing" a cell, and even

23

brag about it.

In the Policy Statement regarding Inmate Personal Property, 5580.08 based on C.F.R. §553, Staff are directed to document items removed from a cell, which in Mr. Caldwell's case did not happen.

Further, in her Memo to Warden Rickard, Ms. Boncher directs the Warden to reissue the DHO Report, and reinstate the sanctions against Mr. Caldwell. A reminder here, that the Bureau Of Prisons Policy Statement 5270.09 Inmate Discipline Program, only allows for Fifteen (15) days from the DHO's decision to issue the complete report. In this instance, Mr. Caldwell was **sanctioned** by the DHO on 7 January 2025, and Ms. Bonchers order to reissue the DHO Report was received by Warden Rickard on 17 March 2025. This is Fifty Five (55) days outside of the allotted time as stated by the Bureau Of Prisons Policy Statement 5270.09. This action by Ms. Boncher is ultra vires, and is an unlawful order, as it violates clearly established law and the Bureau's own Policies.

This violates Mr. Caldwell's procedural Due Process under the Fifth Amendment as the Policy Statement sets forth time limits, and Bureau Of Prisons Employees have simply been negligent in meeting them.

Further, this violates the Double Jeopardy clause, as Mr. Caldwell was awarded the win on his Administrative Remedy Appeal, yet in her Memo to Warden Rickard on the same day, Ms. Boncher is directing the reinitiation of the disciplinary action.

In Bureau Of Prisons Policy Statement 3420.12 Standards for Employee Conduct, "Where the employee's conduct violates a criminal

24

statute, reliance on the advice of an ethics official cannot ensure they will not be prosecuted."

Because of her ultra vires actions, and her conscious decision to issue the directive to Warden Rickard, directing him to order the DHO to reinstate the disciplinary proceedings against Mr. Caldwell, Ms. Boncher has committed 2 felonies, both punishable by terms of Federal Prison time. The first is 18 U.S.C. §241, Conspiracy against rights. Ms. Boncher has enlisted Warden Rickard as well as DHO Nalepa as co-conspirators if the furtherance of the deprivation of Mr. Caldwell's Constitutional Rights. These Rights being Due Process and Double Jeopardy under the Fifth Amendment to the United States Constitution. Second is 18 U.S.C. §242, Deprivation of Rights Under Colour of Law, where Ms. Boncher, Warden Rickard and DHO Nalepa each have actually violated Mr. Caldwell's Due Process Rights, as well as his Double Jeopardy rights.

Further, since these actions also violate Bureau Of Prisons Policy Statements, the actions of these employees is ultra vires and are reviewable under the Administrative Procedures Act, 5 U.S.C. §§701 et seq. To this end, Mr. Caldwell's claim survives and Mr. Caldwell is entitled to judicial review.

ISSUE VII: Mr. Caldwell expressly incorporates by reference the facts and information set forth and relied upon by him is ISSUES I thru VI.

Op 18 March 2025, Mr. Caldwell did receive from DHO Naplepa, a revised version of the DHO Report relied upon by DHO Nalepa to reinstate the overturned sanctions that DHO Nalepa originally imposed on Mr. Caldwell on 7 January 2025. This action was done at the

25

direction of Ms. Amy Boncher, the Northeast Regional Director within the Bureau Of Prisins.

In a 10 March 2025 Memo to Warden Rickard, Ms. Boncher directed the Warden to direct DHO Nalepa to reinstate disciplinary action against Mr. Caldwell, despite the fact that Mr. Caldwell showed factually that the Bureau Of Prisons had violated clearly established Law, it's own Policy Statements and Mr. Caldwell's Constitutional Rights. This nunc pro tunc issuance of a DHO Report violates the Double Jeopardy Clause of the Fifth Amendment, where it is issued to cure an already adjudicated wrong, where Ms. Boncher in her 10 March 2025 to Warden Rickard acknowledges that there is an issue within the disciplinary process as it applies to Mr. Caldwell and GRANTS his Administrative Appeal.

This is viewed as a win for Mr. Caldwell in any other forum, and the Bureau Of Prisons' attempt to resurect a dead issue that was decided in Mr. Caldwell's favor, simply cannot be allowed to stand. The Bureau Of Prisons again violated well established law under Wolff v. McDonald, 418 U.S. 539, 556-57 (1974); and Superintendant v. Hill, 472 U.S. 445, 454 (1985), It's own Policy Statements and the Code of Federal Regulations, from which Policy Statements are derived.

To this end, Mr. Caldwell has clearly shown the violation of his Constitutional Rights, the illegal ultra vires actions of the Bureau Of Prisons employees, and thus his claim survives and is also reviewable under the Administrative Procedures Act, 5 U.S.C. §§701 et seq.

ISSUE VIII:  Mr. Caldwell expressley incorporates by reference the

26

facts and information set forth and relied upon by him in ISSUES I thru VII.

On 26 March 2025, Mr. Caldwell filed a timely and meritorious BP-11, Central Office Remedy Appeal, where he outlined his claims/ concerns, cited the appropriate case law that showed how Bureau Of Prisins employees acted ultra vires where they acted contrary to Bureau Of Prisons Policy Statements, C.F.R.'s and clearly established law as set forth by the United States Supreme Court.

It is a well settled Canon, that decisions of the United States Supreme Court become the Governing Law. "Once the Court has spoken, it is the duty of other Courts to respect that understanding of the Governing Rule Of Law." United States v. Hillie, 14 F.4th 677 (CA. D.C. 2021); City of Boerne v. Flores, 521 U.S. 507, 535-536 (1997)[18]"When the United States Supreme Court interprets the Federal Constitution, the Supreme Court acts within the judicial branch's province, which embraces the duty to say what the law is."; Lockyer v. Andrade, 538 U.S. 63 (2003) Held c) "A decision is contrary to clearly established precedents if the [Bureau Of Prisons] applied a rule that contradicts the Governing Law set forth by this Court's cases..."

As the BP-11 shows, Mr. Caldwell provided the Bureau Of Prisons Central Office with ample information to show that the Bureau Of Prisons' Northeast Regional Director Amy Boncher, and FCI Otisville's Warden Erik Rickard, and DHO Nalepa and Lt. B. Turk acted ultra vires with regards to the Bureau Of Prison's own Policy Statements, and violated clearly established law as set forth by the United States Supreme Court.

On 14 April 2025, National Inmate Appeals Administrator, Timothy

27

Barnett replied to Mr. Caldwell, and his response was received at FCI Otisville on 23 April 2025, and delivered to Mr. Caldwell on 24 April 2025.

In his response, Mr. Barnett completely fails to understand the nature of Mr. Caldwell's claim that His Due Process Rights and Double Jeopardy Rights have been violated by the illegal , ultra vires actions of Bureau Of Prisons employees in their zeal to prove a point rather than follow the Rule Of Law and the Bureau's Policy Statements.

Mr. Barnett's response fails to address any claims that Mr. Caldwell presented. This response reads like a disinterested despot's upholding of a decision made at a lower level. The clearly established law should have been an indicator to Mr. Barnett that something was off, but instead, he chose to go with the flow and uphold the Regional Director despite being shown the illegality of the Northeast Regions actions.

Mr. Barnett disgraces and discredits the term Administrator, and exemplifies the term Bureaucrat. Mr. Barnett had in his grasp the opportunity to set a true and correct course, yet chose instead to put the ideology of the Bureau Of Prisons ahead of proper interests of justice, and to stand up for what is right. Instead, Mr. Barnett, in his supervisory capacity chose to stand behind what is wrong and uphold Bureau Of Prisons employees violateing Policy Statements, and clearly established law, and the Constitutional Rights of Mr. Caldwell.

Because his actions are ultra vires, Mr. Caldwell's claim survives and is also reviewable under the Administrative Procedures Act, 5 U.S.C. §§701 et seq., and Mr. Caldwell is entitled to judicial review.

28

ISSUE IX:  Mr. Caldwell expressly incorporates by reference the facts and information set forth and relied upon by him in ISSUES I thru VIII.

Mr. Caldwell's last claim is that of a Constitutional Deprivation in the future.  As a sanction, DHO Nalepa has deprived Mr. Caldwell of Forty One (41) days of GCT (Good Conduct Time) which will take effect on a future date.  Mr. Caldwell's release date prior to this incident was set for  08 August 2030   , and after the loss of the Forty One (41) days of GCT (Good Conduct Time) is now set for 18 September 2030   .  Mr. Caldwell has shown the Court that the Federal Bureau Of Prisons has acted ultra vires where the violation of Bureau Of Prisons Policy Statements, clearly established law as set forth by the United States Supreme Court, and deprived him of his Fifth Amendment Rights to Due Process and violated his Right to be free from Double Jeopardy.  Mr. Caldwell now faces a Deprivation of Liberty at a future date as noted above, in violation of his Fifth Amendment Rights.  Mr. Caldwell will seek injuntive relief to enjoin the Bureau Of Prisons from enforcing this future Deprivation of Liberty, which was unfairly, unjustly and illegally assessed to Mr. Caldwell.

## CONCLUSION

The Petitioner, Mr. Caldwell, has shown this Court Good Cause that the Petitioner's Constitutional Rights have been violated by the Federal Bureau Of Prisons, to wit:

1) In ISSUE I, Mr. Caldwell's Constitutional Right to Due Process was violated where Lt. B. Turk LIED and falseley Certified that he delivered Mr. Caldwell's Incident Report #4048603 to him on 2 January 2025.  Lt. B. Turk violated Bureau Of Prisons Policy Statement

29

5270.09, which states that Mr. Caldwell MUST receive the Incident Report within 24 hours of the alleged incident. This Policy Statement clearly was not adheeed to. Further, in falsifying the document which states that he delivered the document, he also violated Bureau Policy Statement 3420.12 Standards for Employee Conduct, falsifying a document is clearly an action which the Bureau Of Prisons frowns upon.

It is a long standing principle of Administrative Law, that an agency MUST follow their own regulations. See Ayala Chapa v. Bondi, 132 F.4th 796 (CA5 2025); "An Agency acts ultra vires when it 'goes beyond what Congress has permitted it to do.'" "Agencies are creatures of Congress; an agency literally has NO power to act unless Congress confers power upon it." City Of Arlington v. FCC, 569 U.S. 290,297-298 (2013). These holdings of the United States Supreme Court are why Congress enacted the Code Of Federal Regulations (C.F.R.'s), refered to in each ISSUE and why Policy Statements MUST be adhered to by Federal Agencies and their employees, to prevent this unbridled execution of lawless actions which deprive the people of their procedural Due Process Rights.

In ISSUE II, Mr. Caldwell attempted to assert his rights under Bureau Of Prisons Policy Statement 5270.09, which states that an inmate MUST receive the Incident Report within 24 hours of the alleged incident. Here, this did not happen, and Mr. Caldwell's Due Process Rights were violated where he had to stand UDC Proceedings without advanced written notice of the impending disciplinary action.

This is a violation of clearly established and long standing law. See Superintendant v. Hill, 472 U.S. 445, 454 (1985), where the Court stated that "to comport with procedural Due Process, an inmate charged with a violation in a disciplinary hearing, MUST be given (1)

30

advanced written notice of the disciplinary charges.

As a matter of law, Mr. Caldwell's claim has shown that he has sustained a Constitutional injury and MUST be made whole.

In ISSUE III, where Mr. Caldwell had to stand DHO Proceedings, again, without any copy of the Incident Report, DHO Nalepa has violated Bureau Of Prisons Policy Statement 5270.09. When compared to Superintendant, supra, the Bureau and it's employees have acted ultra vires, and Mr. Caldwell has sustained a new Constitutional injury as a result of those actions.

In ISSUE IV, again DHO Nalepa committed a Constitutionaly fatal error, and acted ultra vires where he initiated the sanctions imposed by him at the DHO Hearing prior to serving Mr. Caldwell with a copy of the DHO Report, outlining the evidence relied on and the reasons for the disciplinary actions. See Superintendant, supra at 454.

This action by DHO Nalepa also violates Bureau Of Prisons Policy Statement 5270.09 Inmate Disciplinary Program. DHO Nalepa's actions are ultra vires and violate long standing and clearly established law as set forth by the United States Supreme Court's case law.

In ISSUE V, Mr. Caldwell shows the Court that DHO Nalepa issued a BLANK DHO Report, that clearly fails to comply with the Supreme Court's Mandate in Superintendant, supra. Further, DHO Nalepa certifies via his electronic signature that the information in the DHO Report is true and accurate. This simply is not the case, and DHO Nalepa has falsified a report in violation of Bureau Of Prisons Policy Statement 3420.12 Standards for Employess Conduct.

Again, this action by DHO Nalepa is an ultra vires action in violation of not only agency policy, but also of clearly established

31

law as set forth by the United States Supreme Court's case law, which has caused Mr. Caldwell a new Constitutional injury.

In ISSUE VI, Mr. Caldwell's claim is mischarecterized by the Northeast Regional Director for the Federal Bureau Of Prisons, Ms. Amy Boncher.

In her response to Mr. Caldwell she states onething, and in her response or Memo to the Warden of FCI Otisville, Erik Rickard, her statement is 180° opposite of what she states to Mr. Caldwell, and she orders/directs DHO Nalepa via Warden Rickard to reinitiate disciplinary proceedings against Mr. Caldwell. Not only is Ms. Boncher a LIAR, but she has acted ultra vires where she violated Bureau Of Prisons Policy Statement 3420.12 Standards for Employee Conduct, as well as clearly established law as set forth by the United States Supreme Court and it's case law, and her actions are also in direct violation of the United States Constitution's Fifth Amendment, Due Process and Double Jeopardy Clauses.

In ISSUEVII, Mr. Caldwell showed the Court how the Bureau Of Prisons issued a nunc pro tunc DHO Report to reinitiate the disciplinary proceedings against him. These are the actions of a desperate and despotic agency that has no inkling whatsoever that they themselves are required to play by the RULES. As shown here in the instant case, the employees of the Bureau Of Prisons will LIE, violate their own Policy Statements and clearly established law as set forth by the United States Supreme Court, to show inmates who's boss. Again, Mr. Caldwell has suffered a Constitutional injury at the hands of despots who cannot stand the idea of losing.

In ISUE VIII, the National Inmate Appeals Administrator, Timothy

32

Barnett turns a blind eye and appears to condone the illegal, ultra vires actions of those Bureau Of Prisons employees who seek to deprive inmates of their Constitutional Rights.

In his supervisory capacity as an administrator, Mr. Barnett had the opportunity to uphold the clearly established law as set forth by both Congress and the United States Supreme Court, yet he chose not to do so. Mr. Barnett had the opportunity to correct and or prevent further Constitutional Injury to Mr. Caldwell, yet Timothy Barnett in his supervisory capacity chose to do NOTHING.

Finall in ISSUE IX, Mr. Caldwell is still facing an impending extension of his prison sentence at the hands of the very criminals who are in charge of upholding the law within the Federal Bureau Of Prisons which employs them. Not only has Mr. Caldwell been denied his Firth Amendment Due Process Rights, his Fifth Amendment Double Jeopardy Rights, his Sixth Amendment Confrontation Rights, but now he is at risk of deprivation of his Fifth Amendment Right against Deprivation of Liberty.

Mr. Caldwell has clearly stated and articulated to the best of his ability, his Constitutional claims and the controlling agency policies as well as controlling law as set forth by Congress and the United States Supreme Court.

Mr. Caldwell's demand for the Constitutional injuries suffered at the hands of the Federal bureau Of Prisons' Employees for their Unconstitutional and ultra vires acts is Four Hundred and Twenty Thousand Dollars (U.S.) ($420,000.00), or a jury trial to perfect Mr. Caldwell's claim(s). For the impending deprivation of his Forty One (41) days of Liberty, Mr. Caldwell's demand is for a

33

Court Order, enjoining the Federal bureau Of Prisons from depriving him of his Forty One (41) days of Liberty and returning his out-date to the original date of 08 August 2030, or a jury trial to perfect his Constitutional claim against the Federal Bureau Of Prisons and it's employees who have acted in and illegal and ultra vires manner.

**WHEREFORE NOW,** Mr. Caldwell MOVES this Court to allow him to move forward with his Constitutional complaints, and ORDER the Federal Bureau Of Prisons and Defendants et al to responde to Mr Caldwell's complaint herein.

Done this 21st day of August 2025.

Respectfully Submitted,

*Kerry G. Caldwell*
Kerry G. Caldwell
#22279-044
FCI Otisville
P.O. Box 1000
Otisville, NY.  10963
in pro se, in necessity

## VERIFICATION

I declare under penalty of perjury as authorized by 28 U.S.C. §1746, that the factual allegations and the factual statements contained in this document are true and correct to the best of my knowledge.

Respectfully Submitted this 21st day of August 2025.

*Kerry G. Caldwell*
Kerry G. Caldwell
#22279-044
FCI Otisville
P.O. Box 1000
Otisville, NY. 10963

34





RECEIVED
AUG 29 2025
PRO SE OFFICE



Retail

U.S. POSTAGE PAID
FCM LG ENV
OTISVILLE, NY 10963
AUG 26, 2025

10601

$0.00

RDC 99

R2305M146583-1



CERTIFIED MAIL

9589 0710 5270 1820 2688 44

Clerk Of Courts
U.S. District Court
* Southern District
300 Quarropas Street
White Plains, NY 10601
United States



RECEIVED
AUG 29 2025

FEDERAL CORRECTIONAL INSTITUTION
OTISVILLE, NY 10963

DATE: 8/26/25

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question of problem over which this facility has no jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another address, please return the enclosure to the address above.